Roger S. Hanson, ESQ.
1517 E. 4th Street
Santa Ana, CA 92701
(714) 953-0638
California State Bar 37966

Attorney for Petitioner,
Jose Gonzalez-Gonzalez
(Not Member of New Mexico Bar)

FILED
AT ALBUQUERQUE NM
DEC 26 2000
ROBERT M. MARCH
CLERK

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff & Respondent,<br><br>v.<br><br>JOSE GONZALEZ-GONZALEZ,<br><br>Defendant & Petitioner, on 28 U.S.C. 2255 proceedings. | Case No.: 98-DV-1475 MV/WWD<br><br>PROPOSED FINDINGS OF FACT/CONCLUSIONS OF LAW<br><br>EVIDENTIARY HEARING OF Nov. 2, 2000<br>Hon. William Deaton<br>Chief U.S. Magistrate Judge |

To the Honorable William Deaton, Chief U.S. Magistrate Judge District of New Mexico; To the U.S. Attorney, District of New Mexico by ReneeLyn Camacho, Assistant U.S. Attorney:

Defendant-Petitioner Jose Gonzales-Gonzales by his attorney Roger S. Hanson, submits the following proposed findings of Fact/Conclusions of Law following the Evidentiary Hearing held on November 2, 2000, at the U.S. Court House, Albuquerque, New Mexico, before the Hon. William Deaton, Chief United States Magistrate Judge.

Dated: December 6, 2000, at Santa Ana, California.



Roger S. Hanson, ESQ.
Counsel to Petitioner-Defendant
Jose Gonzales-Gonzales

**SUMMARY OF FACTS TESTIFIED TO AT SAID HEARING OF NOVEMBER 2, 2000 (REFERENCED TO TRANSCRIPT, THE ORIGINAL OF WHICH HAS BEEN LODGED WITH THE COURT; E.H.= EVIDENTIARY HEARING AT ___ PAGE & ___LINE)**

Preliminary proceedings identified 9 Exhibits to be offered by counsel to petitioner. (See page 3, E.H.; see pages 7-9, E.H.) All 9 were admitted at this time save for No.4; E.H. 9, lines 2-8) Nota Bene: Eventually Exhibit 4 was admitted on the Court's own volition; See E.H. ________.

**EVIDENCE**

1. Charles Benninghoff, ESQ. (E.H. 910) was trial counsel for petitioner Gonzales but was not any longer a Member of the Bar of the Supreme Court of California (E.H. 10-11). Benninghoff had a partner by the name of Martin Molina who also had represented petitioner Gonzalez in various aspects and appearances in U.S. District Court in New Mexico.

Attorney Benninghoff had originally represented petitioner Gonzales in a "writ of error coram nobis" before the Hon. Martha Vasquez, which successfully resulted in the withdrawal of a once-entered plea of guilty (E.H. 11).

As an aside and subsequent to trial, Attorney Benninghoff had suffered some health problems that had affected his memory;

two years ago he had suffered a heart attack, requiring three surgeries, and a loss of blood, resulting in three days of unconsciousness. One final result of these medical problems was a loss of memory. (E.H. 11, line 22-E.H. 12, line 13).

After the successful withdrawal of a once-entered plea of guilty, Martin Molina and Benninghoff were further retained to represent petitioner Gonzales at his trial, although Benninghoff stated that the goal of both client and counsel was to achieve a "plea agreement" (E.H. 12-13, especially E.H. 13, lines 1-3).

Additional Exhibits 10 & 11 were the attorney-client agreements between petitioner and counsel Benninghoff, written in Spanish. (E.H. 12, line 17-E.H. 17, line 11). At the suggestion of the chief U.S. Magistrate Judge, Exhibits 10 & 11 were offered. (E.H. 17, lines 9-11).(See also E.H. 17, line 17-E.H. 18, line 25).

Benninghoff could not recall defense Exhibits 2 & 3 when shown to him, Exhibit 2 being an English translation of Exhibit 2. (E.H. 19, line 1-E.H. 20, line 23). The Government prepared Ex. 3 from Ex. 2. (E.H. 20, lines 17-23)

Petitioner Gonzales had personally executed Exhibit 2, Martin Molina having been dispatched to New Mexico to finalize the attempted plea bargain. (E.H. 20-22). Petitioner had affixed his signature on November 2, 1995.

Exhibit 5 was a declaration by Attorney Martin Molina which verified that petitioner had accepted and signed a plea agreement in anticipation of the final entry of a plea pursuant to that agreement set for November 8, 1995, before U.S. District Judge Martha Vasquez. (E.H.22-24) Trial counsel Benninghoff admitted and acknowledged that Exhibits 2&3 were warnings to petitioner that he "faced an uphill battle" on the merits of defending the criminal charges in New Mexico, and thus the desired move was to negotiate, and eventually accept, a plea bargain. (E.H. 24, line 4-E.H. 26, line 10) As a consequence, Mr. Benninghoff and/or his associate, Martin Molina, entered into plea negotiations with the government, which was culminated in Exhibit 6 at this Evidentiary hearing. (E.H. 27) The government prepared the English version of Exhibit 6, which was then translated into Spanish to enable petitioner Gonzalez to have complete understanding of it. (E.H. 27-28). The document appeared to be executed on behalf of the government by "Larry Gomez for Presiliano Torrez" of the U.S. Attorney's office and by attorney Charles Benninghoff, that execution occurring on November 8, 1995. Petitioner Gonzalez had signed it on November 2, 1995, when Benninghoff's associate Martin Molina, had gone to New Mexico to accomplish this execution and acceptance of the plea bargain. Benningoff expressed inability to recall whether he even went to New Mexico on November 8-9, 1995, but

acknowledged that a transcript of the hearing before the Hon. Martha Vasquez on November 9, 1995, showed his presence and participation (E.H. 29-30); at this hearing petitioner Gonzalez was not present, being ill with a kidney stone attack and confined to a Santa Fe hospital. However, it was clear at that hearing that the Court expected a plea to be entered and the case terminated by the written plea agreement that had then been executed by petitioner, petitioner's counsel, Mr. Benningoff, and the office of the U.S. Attorney (E.H. 30-32).

Mr. Benningoff simply could not "remember" why the plea bargain was not then finalized to terminate the case; he did not recall "making the trip" on November 8-9, 1995, and thus could not remember visiting petitioner Gonzalez either before or after the live hearing on November 9, 1995. (E.H. 33-34)

After the U.S. District Court (Judge Martha Vasquez) had suggested a hiatus in the proceedings, and use of her chambers/phones to call Presiliano Torres in Las Cruces, Benninghoff could not remember whether that phone conversation had ever occurred. (compare E.H. 34, lines 21-24 with the invitation of Judge Vasquez made at the November 9, 1995, hearing). However, clearly, Mr. Torres, acting for the government, signed the plea agreement that date and Mr. Benninghoff could not explain, nor could he recall, why he never brought the matter back before Judge Vasquez to terminate the

case. (E.H. 35) He could not recall any further personal or telephone contact with petitioner after November 9, 1995, but eventually Defense Exhibit 1 was issued by the clerk, showing receipt by Benninghoff's office, setting a trial date.

Clearly, however, the government had committed to a 10-year sentence, as acknowledged by the U.S. Magistrate Judge at (E.H. 39, lines 16-18).

While Mr. Benninhoff now contended that petitioner "rejected" the plea bargain on November 9, 1995, defense counsel again reminded him that petitioner was not even present and thus could do nothing to alter the fully executed plea agreement (E.H. 39-40).

Between November 9, 1995, and the start of the trial, Mr. Benninghoff had not returned to New Mexico, but could have conversed by telephone. (E.H. 42- )

In any event, Martin Molina's sworn statement at paragraph 7, page 3 of Exhibit 9, to wit:

> "On November 8, 1995, during the scheduled change of plea hearing before the Court, and in the presence of Attorney Benninghoff, appellant informed the Court that he did not wish to plead guilty, and wanted, instead to proceed to trial. Everyone in the courtroom was surprised."

Was clearly erroneous not only as to date, but as to petitioner's alleged presence before the Court, and the claim that such had occurred in open Court before Judge Vasquez.

The chief U.S. Magistrate Judge termed the declaration an "obviously self-serving thing Mr. Molina had filed." (E.H. 40-42).

Once again Benningoff admitted to not going back before Judge Vasquez between November 9 & December 1, 1995, to enter the plea agreement and thus end the case which he felt could not be favorable to petitioner if tried. (R.T.A. 43-46) Benninghoff could not recall if he had ever presented the fully executed plea bargain to petitioner on or after November 9, 1995, to insure that petitioner was aware that the plea bargain had been fully executed by every one.

Benninghoff had been convicted of a federal felony in U.S. District Court in 1998, in Los Angeles before Judge Rael (sic, Real, i.e., the Honorable Manuel Real—this spelling correction by this attorney, Roger S. Hanson, who is familiar with the federal bench in the Central District of California in Los Angeles)(E.H. 46-47) Benninghoff believed, however, that it was petitioner that insisted on going to trial, which was "very much against my advice," and "I was shocked that he chose to do that." (E.H. 47-48).

2. Jose Gonzalez (E.H. 49) testified in his own behalf. The initial retainer paid to Charles Benninghoff was for the "writ of coram novis or something like that," which successfully resulted in withdrawal of a once-entered plea of guilty. (R.T.A.

50) Thereafter petitioner had further retained Benninhoff's office for subsequent trial, or whatever might thereafter follow. (E.H. 50-51). The original sentence was for "15 years" and petitioner had shown that that consequence had not been fully explained to him; Martin Molina had then been able to work out the lesser sentence of 10 years, although Molina once told petitioner that he was trying for "6 to 10 years." (E.H. 51)

Petitioner identified Exhibits 2 &3 as the documents brought to him by Martin Molina, who told him that he could possibly move petitioner from Column II to Column I because of petitioner's previous state conviction being "minimal," and II "overstated his criminal history." On November 2, 1995, petitioner executed the plea bargain in the presence of Martin Molina, (E.H. 51-54), which was Exhibit 6, and petitioner understood that he would get 10 years, or possibly lower if counsel could keep him in Column I. (E.H. 54-56) Molina then left New Mexico, and petitioner only learned of the November 9, 1995, entry of plea hearing that morning when the guards came to the Estancia, New Mexico facility to take him to Court. (E.H. 57)

However, petitioner had suffered from kidney stone pain the previous evening, and when he was taken to a holding cell in Santa Fe for the November 9, 1995, appearance he learned that Judge Vasquez had ordered him to be hospitalized (E.H. 58-59).

He received medical treatment, but was not taken to Court to enter his plea. Benninghoff visited petitioner on the afternoon of November 9, 1995, discussed the plea bargain being now executed by everyone, and petitioner told him that he was satisfied and desired to plead.

However, Benninghoff told petitioner that he was going to try to do even better, and "get another 2 points off." If that failed, the executed plea bargain would nonetheless be honored. (E.H. 60-62)

Benninghoff told petitioner that the government would "probably accept the reduction," but that the government wanted to continue the appearance until January, 1996. (E.H. 62-63) However, petitioner was then told that he plea agreement "had not been accepted" and that "they had to go to trial," that "there had been too many delays," and the judge rejected any further delay into January 1996, (E.H. 63-64) petitioner learning of this about a week before trial.

The docket sheet revealed a joint motion by both the government and defense made 12-11-95 to continue a 12-18-95 trial, petitioner believing that all postponements dealt with dates of entering the plea of guilty.

Petitioner did not tell either attorney Molina or attorney Benninghoff that he did not want the plea bargain and that he wanted to go to trial. (E.H. 64-65) When Benninghoff told him

the judge because he knew Benninghoff to be his counsel, and believed what Benninghoff had told him. Benninghoff spoke only English, brought no interpreter, and petitioner had difficulty in communicating. Molina, who was bilingual, was asserted to be then "sick in the hospital." (E.H. 65-66) At no time did Benninghoff explain why he had not gotten back before the Court the now-executed November 9, 1999, plea bargain. (E.H. 66-67)

Petitioner explained his difficulty with his Court-appointed attorney, one Van Arnum, that led to the initial plea of guilty, and subsequent withdrawal of it via the Writ of Error Coram Nobis, and because of those experiences he relied on Molina and Benninghoff, nor personally addressing the District Judge. He admitted his complicity in the instant charges, while denying riding in any vehicle that once went through a west-bound check point, reversing its direction, and then stopping at a point westerly of where petitioner was eventually found. (E.H. 67-80)

The Government called no witnesses. (E.H. 80, lines 22-23) Defense counsel Hanson professed inability to determine what caused the Clerk to set a trial in this cause by the Notice sent and received by the office of Charles Benninghoff on December 1, 1995. An examination of the Court's file failed to reveal the answer (E.H. 80-84).

The Court invited Proposed Findings of Fact (E.H. 84, lines 14-21).

Based on the above synopsis of the Evidentiary Hearing held November 2, 2000, and based on the Plea Transcript of November 9, 1995, of which copies are attached to pleadings in this 2255 petition, Movant and Petitioner Gonzalez-Gonzalez makes the following:

## PROPOSED FINDINGS OF FACT

1. The law offices of Charles Benninghoff and Martin Molina represented petitioner Jose Gonzales-Gonzales at all times relevant to plea negotiation and eventual trial in this case in the District of New Mexico in 1995.
2. Being concerned that petitioner be made aware of the perceived difficulties in defending the case on its merits, Benninghoff and Molina caused the preparation of Defense Exhibit 2, which was translated into English as Defense Exhibit 3 by the office of the U.S. Attorney in this District.
3. On or about November 2, 1995, attorney Martin Molina personally presented Exhibit 2, to petitioner Gonzales and discussed its contents and ramifications, securing petitioner's signature to it.

4. At the same time and date, a proposed plea bargain was presented, discussed, and executed as to its acceptance by petitioner. This was hearing Exhibit 6.

5. The transcript of a proposed time of entry of plea that occurred on November 9, 1995, supports the fact that the petitioner was ill and was at that time confined to a Santa Fe hospital with knowledge of, and pursuant to the order of U.S. District Judge Martha Vasquez, before whom the plea was to be entered.

6. Assistant U.S. Attorney Larry Gomez appeared for the government at the hearing and attorney Benninghoff appeared without his client.

7. The transcript of the November 9, 1995, hearing reveals a failure to then obtain acquiesced by AUSA Gomez as to the prepared plea agreement, and District Judge Vasquez offered her chambers and phone to AUSA Gomez to call AUSA Presiliano Torres in Las Cruces.

8. While the result of any contact between AUSA Gomez and AUSA Torres is not reported, it can be inferred that Mr. Gomez subsequently agreed to the plea bargain as written in Exhibit 6, and did in fact execute it on November 9, 1995.

9. Charles Benninghoff, counsel to petitioner, executed Exhibit 6 on November 8, 1995.

10. Therefore upon execution of Exhibit 6 by AUSA Larry Gomez on November 9, 1995, the plea bargain was fully agreed to by defendant-petitioner Gonzales, his counsel Charles Benninghoff, and the Government, acting via AUSA Larry Gomez.

11. This record supports no further effort of either the defense or the government to recall the case before Judge Martha Vasquez and the entry of the plea of guilty pursuant to the provisions0 of Exhibit 6.

12. At the November 2, 2000, Evidentiary Hearing before this Court, Attorney Benninghoff testified that he had suffered a heart attack, had extensive surgeries, with loss of blood, and had been unconscious for several days in 1998; as a result of his memory of the events of November 9, 1995, were obscured to the extent that he did not remember coming to New Mexico and appearing at the contemplated Entry of Plea of Guilty hearing; after the agreement was duly executed by all parties, he had no memory of why he did not get the case recalendered before Judge Vasquez; he did not recall whether or not he had told petitioner Gonzales about the completed execution of Exhibit 6; he, presumably, left New Mexico and made nor further appearance in U.S. District Court.

13. Petitioner Gonzales-Gonzales testified that Mr. Benninghoff had visited him the afternoon of November 9, 1995, and showed him the completed plea bargain. While petitioner testified that he wanted to be brought to Court, he testified that Mr. Benninghoff told him that he felt he could secure even a better deal, and would advise him thereof.

14. The record indicates that on or about December 1, 1995, Benninghoff was advised of a December, 1995, trial date; the record fails to elucidate whether Benninghoff or the government advised the Court that the plea would not be presented, or, alternately that the Clerk of the Court set a trial date, no plea having been presented to Judge Vasquez.

15. The petitioner and Mr. Benninghoff diametrically differ on the cause of the trial, petitioner asserting that he desired the honoring of the plea bargain, while Mr. Benninghoff now asserting that petitioner had insisted on going to trial.

16. Trial occurred before a jury in this District in Las Cruces, petitioner being convicted, and receiving a sentence essentially twice as bad as the negotiated plea of 10 years.

17. Petitioner testified that he did not personally urge the honoring of the fully executed plea bargain because Benninghoff had told him that Judge Vasquez finally rejected any plea negotiations and required the trial, and since Benninghoff was his counsel he did not believe he could complain to the Court personally about the failure to honor the plea bargain.

18. The Court should now order that the plea bargain be honored, and petitioner's sentence reduced pursuant thereto, because:

a. A plea bargain for less custodial time is a valuable asset of a criminal defendant, and fully executed plea bargain had been consummated at some time on the date of November 9, 1995.

b. The defense attorney fully believing that it was in the best interests of petitioner Gonzales to plead guilty, which was supported by hearing Exhibits 2 & 3, failed to bring the matter back before Judge Vasquez on either November 9, 1995, or as soon as practicable thereafter, thus flying in the face of his own professional judgment that the plea was the most beneficial path that could be taken.

c. The combined fact that attorney Benninghoff was been convicted of a federal felony in the Central District

of California, plus his failure to explain his inability to get the plea bargain again before Judge Vasquez supports a conclusion by this Court that petitioner was denied the effective assistance of counsel under the guarantees of the Sixth Amendment to the United States Constitution, and had a more favorable disposition of his case available via the plea bargain, which was lost due to trial counsel's failure to timely return to Court.

19. The Court should, therefore, find as a matter of fact and a series of facts, that petitioner should be given the benefit of the plea bargain of Exhibit 6, and he should be re-sentenced accordingly.

20. These findings of fact requiring a resentence pursuant to the plea bargain are now found by this U.S. Magistrate Judge, and should be/are certified to the Honorable Martha Vasquez, with the recommendation that the District Court order petitioner Jose Gonzales-Gonzales be re-sentenced pursuant to the plea bargain of Exhibit 6.

21. Where proposed facts are conclusions of law, and vice-versa, they should be treated as is necessary to carry out the desired result of a resentence pursuant to Exhibit 6.

22. All exhibits are herewith attached and are incorporated by reference, as is the Plea Entry Transcript of November 9, 1995, before the Honorable Martha Vasquez.

23. The original complete transcript of the Evidentiary Hearing of November 2, 2000, is, likewise, fully incorporated herein.

Dated: December 8, 2000, at Santa Ana, within the Central District of California.

Roger S. Hanson, ESQ.
California Bar 37966
Counsel to Jose Gonzales-Gonzales
(Not a member of New Mexico Bar)

**THE EXHIBITS ATTACHED TO THIS PLEADING ARE TO VOLUMINOUS TO SCAN. SAID EXHIBITS ARE ATTACHED TO THE ORIGINAL PLEADING IN THE CASE FILE WHICH IS LOCATED IN THE RECORDS DEPARTMENT U. S. DISTRICT COURT CLERK'S OFFICE.**